## SHAW et al. v. RYAN et al.*
### No. 12478.

Court of Civil Appeals of Texas. Fort Worth.

June 13, 1931.

Rehearing Denied July 18, 1931.

Marshall & King, of Graham, and L. H. Brittain, of Fort Worth, for appellant.

S. A. Penix, of Graham, and E. G. Thornton, of Olney, for appellees.

DUNKLIN, J.

Rex Ryan and H. R. Stastny did certain geological work looking to the discovery of favorable locations for the development of oil and gas in the vicinity of what is known as Henry's Chapel, in the southeastern portion of Young county. That work was done at the instance and request of H. S. Singleton, as agent for T. G. Shaw. After the work was finished, the following contract in writing was executed by the parties whose names are signed thereto, to wit:

"Ryan & Stastny, Consulting Geologists,
"Graham, Texas.
"February 11, 1928.
"Memorandum Agreement.

"This is to confirm a verbal agreement between T. G. Shaw, party of the first part and Rex Ryan and H. R. Stastny, parties of the second part.

"In consideration of geological services rendered by second party in the area of Henry's Chapel in southeastern Young County, Texas, first party agrees to pay second party two hundred ($200.00) dollars as a cash consideration and deliver an oil and gas lease assignment to an eighty acre tract of land, said eighty acres to be located within one-half mile of a well to be drilled or caused to be drilled by first party.

"In event this well is never drilled it is understood that the lease assignment will not be binding.

"[Signed] H. S. Singleton,
"Agent for T. G. Shaw
"Rex Ryan
"H. R. Stastny."

The well referred to in that contract was never drilled; and this suit was instituted by Ryan and Stastny against H. S. Singleton and T. G. Shaw.

It was alleged in the petition that Singleton and Shaw were partners, but that if they were not partners, then that the work was done at the instance of Singleton, acting as the duly authorized agent of Shaw, and therefore the latter was liable as principal.

The petition embodied two counts, the first of which was for specific performance of the contract to convey to plaintiffs the oil and gas lease mentioned in the written contract

*Writ of error granted.

above set out, but upon the trial that count in the petition was abandoned. The second count in the petition was on a quantum meruit for the value of the geological work done by plaintiffs at the instance of defendants, and, from a judgment rendered in favor of plaintiffs on that count against the defendant T. G. Shaw, that defendant has prosecuted this appeal. In this connection, it is to be noted that the court found that plaintiffs had failed to sustain their allegation of partnership between Shaw and Singleton, but had sustained the allegation that Singleton had acted as the agent of Shaw in the transaction, and Shaw was held liable as principal, but that Singleton was not liable, and therefore judgment was rendered in his favor. And no complaint has been made by any of the parties of the judgment in Singleton's favor.

The court did not err in overruling the defendants' general demurrer to the second count in plaintiffs' petition. While that count properly might have been more specific in the allegations, yet under the rule, to the effect that every reasonable intendment of a pleading must be indulged as against a general demurrer, we believe that pleading was sufficient to present the contention that plaintiffs were employed by the defendant Shaw through Singleton as his agent to do the geological work alleged in the pleadings, and that he thereby bound himself to pay the plaintiffs the reasonable value thereof, which was alleged to be the sum of $10,000, and for which a judgment was sought, if the plaintiffs for any reason were not entitled to recover the oil and gas lease mentioned in the written contract.

The trial was before a jury, and the following special issues, with their findings, were submitted in the court's main charge:

"1. From a preponderance of the evidence and from all the facts and circumstances in the case, what was the reasonable cash value of the geological services, if any, rendered by plaintiffs to defendants at the time and place such services were rendered, and which are referred to and contemplated in the written contract between the parties offered in evidence, exclusive of the $200.00 received by plaintiffs from defendants? Answer: $800.00.

"2. Did the defendants drill or cause to be drilled a well as specified under the contract between the plaintiffs and defendants of date February 11, 1928? Answer: No.

"3. Did the plaintiffs and defendants at the time of their contract of February 11, 1928, contemplate the drilling of a well on the Jarnigan land under the first contract made as of date of January 12, 1928, and which was placed in escrow in the Graham National Bank? Answer: No."

Also the following instruction was given to the jury at the request of counsel for defendants:

"Was the service of the plaintiffs as geologists of any value to the defendants, other than and over and above the sum of $200.00 paid to said plaintiffs? Answer: Yes."

The written contract copied reasonably could not be construed as meaning that defendant would not be liable for the services already rendered by the plaintiffs, as recited in that contract, and as was conclusively established by the evidence, if the well mentioned in the contract should not be drilled. The stipulation contained therein, to the effect that if the well referred to is never drilled then the lease assignment would not be binding on Shaw, merely shows that Shaw had the option to discharge his full obligation to the plaintiffs for the services which they had already performed by assigning to them the lease on the 80 acres. It would be unreasonable to so construe that contract as to say that Shaw had the option to absolve himself from liability to the plaintiffs for the services which they had performed merely by electing not to drill the well; and the finding of the jury of the undisputed fact that the well was not drilled removed any obstacle to plaintiffs' right, if any they had, existing before the contract was entered into, to enforce Shaw's implied contract to pay for the services rendered. Nor did defendant plead any agreement by plaintiffs to accept the $200 cash as full payment for their services in the event of defendant's failure to assign to them the 80-acre oil land. As showing the necessity of such a plea, see article 2014, Rev. Civ. Statutes of 1925.

In defendant's answer, it was specifically alleged that the services rendered by the plaintiffs were rendered in view of a prior understanding, which contemplated that the defendants would procure and obtain certain oil and gas leases covering the lands of Mrs. M. R. Jarnagin and her children and other lands owned by John Kissinger, who, it was contemplated, would furnish their lands as parts of a block to be drilled for oil and gas, but the arrangement was never consummated by reason of differences between the defendants and those landowners.

There were further allegations of an understanding with plaintiffs that the 80-acre lease referred to in the written contract was to be taken from the Jarnagin and Kissinger tracts; and defendants' inability to procure leases out of those tracts was alleged as defendants' excuse for failure to convey to plaintiffs the 80-acre lease mentioned in the written contract. But there were no allegations of an agreement by plaintiffs that they would receive nothing further for their services than $200 paid cash in the event of defendants' inability to procure the Jarnagin and Kissinger leases.

We fail to perceive how the facts so alleged could constitute any defense to plain-

tiffs' suit for the value of their services, and therefore there was no reversible error in excluding testimony sustaining those allegations.

Another defense alleged was that the services rendered by the plaintiffs were valueless, but that defense was rejected by the jury, and the findings thereon were amply supported by the evidence, as was also the finding in answer to issue No. 1 submitted by the court.

Nor do we perceive how it could be said, as insisted by appellants, that the findings of the jury were conflicting.

Accordingly, all assignments of error are overruled, and the judgment is affirmed.

BUCK, J. (dissenting).

Briefly, for lack of time to go more thoroughly into the question, I shall state the grounds of my dissent. It does not appear from the memorandum of agreement copied in the majority opinion that any promise was made by defendant of payment in addition to the $200 cash payment. While defendant did specially plead payment in full, I think payment in full could be urged under the general denial. Plaintiffs alleged in their petition: "That on or about the said 11th day of February, 1928, and just prior thereto" the defendant employed plaintiffs to make the geological survey. The written contract is dated February 11, 1928. Therefore, the writer does not see any support for the evident conclusion reached by the majority that the work was evidently done some time before the written contract was made. The contract does provide that defendant was not bound by the agreement to execute the assignment covering 80 acres, unless the well shall be drilled on the tract. Hence it is not certain that defendant agreed directly or impliedly to pay any more than the $200 consideration, since it is shown that the well was not drilled. Hence I am of the opinion that under the pleading, plaintiffs were not entitled to recover.